## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Miracle-Ear, Inc., a Minnesota corporation, ,

        Plaintiff,

vs.

South Georgia Hearing, Inc., a Georgia corporation, M. and M. Hearing, Inc., a Florida corporation, and
Michael A. Miller

        Defendants.

---

Case No. _____

### COMPLAINT

### <u>Jury Trial Demanded</u>

For its Complaint against South Georgia Hearing, Inc ("SGH"), M. and M. Hearing, Inc. ("M&M"), and Michael A. Miller ("Miller"), Plaintiff Miracle-Ear, Inc. ("Miracle-Ear") states and alleges as follows:

### PARTIES

1.    Miracle-Ear is a Minnesota corporation with its principal place of business in Minneapolis, Minnesota.  Miracle-Ear distributes hearing aids to consumers through corporate-owned stores and a franchise system throughout the United States.

2.    Upon information and belief, South Georgia Hearing, Inc. ("SGH") is a Georgia Corporation with its principle place of business at 1601 Baytree Rd. Ste. E, Valdosta, Georgia 31602.

3.    Upon information and belief, M. & M. Hearing, Inc. ("M&M") is a Florida Corporation with its principle place of business at 4069 Lisko Cir., Valdosta, Georgia 31605.

**4.**     Upon information and belief, Michael Miller is a Georgia resident, and the
100% owner of SGH and M&M.

## JURISDICTION AND VENUE

5.     This is an action for declaratory judgment under 28 U.S.C. §2201 and
Federal Rules of Civil Procedure 57, and injunctive relief to enforce the provisions of two
non-compete agreements.

6.     This Court has jurisdiction over this action under 28 U.S.C. §1332 because
there is complete diversity between the parties and the amount in controversy exceeds
$75,000.

7.     As described below, SGH, M&M, and Miller (collectively, "Defendants")
have consented to jurisdiction and venue in the United States District Court for the
District of Minnesota.

## BACKGROUND

8.     Miracle-Ear has developed a business system for operating hearing aid
stores and/or kiosks under the names "Miracle-Ear Centers" and "Sears Hearing Aid
Centers."  Miracle-Ear grants franchises to operate Miracle-Ear businesses using this
business system along with Miracle-Ear trademarks, service marks, slogans and logos.

9.     Sears, Roebuck and Co. ("Sears") and Miracle-Ear are parties to a Master
License Agreement that enables Miracle-Ear to grant sublicenses to franchisees to
operate hearing aid stores in or proximate to Sears retail stores.

## FRANCHISE AGREEMENTS

10.     On or about July 12, 2009, M&M entered into a franchise agreement (the "M&M Franchise Agreement") with Miracle-Ear which entitled M&M to operate Miracle-Ear franchises in the zip codes associated with certain counties in Georgia, and certain counties in Tennessee (the "M&M Territory")

11.     Also on or about July 12, 2009, in consideration of the execution of the M&M Agreement, Miller executed a Personal Guaranty and Assumption of Franchisee's Obligations in which he agreed to "punctually pay and perform each and every undertaking, agreement and covenant in the Agreement," and "to be bound by, and personally liable for the breach of, each and every provision in the Agreement."

12.     On or about August 12, 2009, SGH entered into a franchise agreement (the "SGH Franchise Agreement") with Miracle-Ear which entitled SGH to operate Miracle-Ear franchises in the zip codes associated with certain other counties in Georgia (the "SGH Territories").

13.     Also on or about August 12, 2009, in consideration of the execution of the SGH Franchise Agreement, Miller executed a Personal Guaranty and Assumption of Franchisee's Obligations in which he agreed to "punctually pay and perform each and every undertaking, agreement and covenant in the Agreement," and "to be bound by, and personally liable for the breach of, each and every provision in the Agreement."

14.     The SGH Franchise Agreement and the M&M Franchise Agreement (collectively, the "Agreements") are identical in all respects relevant to this litigation.

15.     The personal guaranties signed by Miller in connection with the SGH

Franchise Agreement and the M&M Franchise Agreement (collectively, the

"Guaranties") are identical in all respects relevant to this litigation.

16.     By signing the Agreements and Guaranties, SGH, M&M, and Miller have

consented to jurisdiction and venue in the District of  Minnesota:

> Any cause of action, claim, suit or demand allegedly arising from or related
> to the terms of this Agreement or the relationship of the parties shall be
> brought in the Federal District Court for the District of Minnesota or in
> Hennepin County District Court, Fourth Judicial District, Minneapolis,
> Minnesota.   Miracle-Ear, Franchisee and each person executing the
> Personal Guaranty and Assumption of Franchisee's Obligations attached
> hereto as Exhibit E irrevocably admit to, and consent to, the jurisdiction of
> said courts.

Agreements § 21(E).

## FRANCHISEE OBLIGATIONS

17.     Under the Agreements, SGH & M&M agreed to "timely pay all of its

obligations and liabilities due and payable to Miracle-Ear," and Miller guaranteed these

obligations.  Agreements § 4(L); Guaranties.

18.     SGH and M&M agreed to pay a royalty and an advertising fund fee for

each hearing aid sold, and to contribute to a national marketing fund, and Miller

guaranteed these obligations.  Agreements §§ 2(B) and 2(C); Guaranties.

19.     Under the Agreements, SGH and M&M committed to pay late fees for

overdue payments and acknowledged that late payments were a breach of the

Agreements:

> All fees, amounts due for goods purchased and other amounts which are not
> paid by Franchisee to Miracle-Ear when and as due shall be subject to a late

4

> charge from the due date of that payment until actually paid equal to the highest lawful annual rate of interest for open account business credit, but not more than two percent (2%) per month.  Franchisee agrees that this provision does not impose any requirement on Miracle-Ear to waive or extend payment dates or to extend credit of any kind of Franchisee and that late payment is a breach of this Agreement and grounds for termination as provided in Section 13 hereof.

And Miller guaranteed these commitments.  Agreements § 2(H); Guaranties.

20.    The Agreements provide that the Agreements terminate for non-payment if the Franchisee is advised of a default under the agreement, and fails to cure within the cure period:

> [U]pon receipt of a written notice of a failure to pay any amount when due…Franchisee shall have (30) days after its receipt from Miracle-Ear…within which to remedy any such payment or default hereunder, and to provide evidence thereof to Miracle-Ear.  If any such default is not cured within that time…this Agreement shall terminate without further notice to Franchisee effective immediately upon the expiration of the thirty (30) day period….

Agreements § 13(D).

21.    Pursuant to paragraph 14B(11) of the Agreements, Miller agreed not to own, operate, or conduct a competing business within the Territories – until the date on which his franchise would have expired (July 12, 2014 for the M&M Agreement; August 12, 2014 for SGH Agreement).

> In the event this Agreement is terminated prior to its expiration date due to a default by Franchisee, Franchisee agrees that, for a period extending from the date of termination through what would have been the expiration date of the term of this Agreement or one year, whichever is greater, Franchisee will not, directly or indirectly, on his own account or as an employee, consultant, officer, director, shareholder or partner of any other person, firm or entity, own, operate, conduct, engage in, be connected with, or have any interest in any business which sells or dispenses hearing aids in the Territories.

Agreements § 14(B)(11).

22.     In Paragraph 21(B) of the Agreements, Defendants acknowledged that:

any failure to comply with the requirements of Sections . . . 14B(11) [the non-competition provision] will cause Miracle-Ear irreparable injury and the franchisee hereby accordingly consents to the entry without bond or security of an order by any Court of competent jurisdiction for specific performance of, or for an injunction against violation of, the requirements of such provisions.

23.     According to Section 14(B) of the Agreements, Defendants will have

certain post-termination obligations including the following:

a.     Immediately cease to operate the franchised business as a Miracle-Ear franchise;

b.     Immediately cease use of confidential information, procedures and techniques associated with the Miracle-Ear system, including all customer names and files;

c.     Immediately return all items which display Miracle-Ear's marks, including all signs, equipment, advertising materials, stationery, forms and any other articles which display marks associated with the Miracle-Ear system;

d.     Immediately cease competing with Miracle-Ear by owning, operating, conducting, engaging in, being connected with, or having any interest in, any business which sells or dispenses hearing aids – either as an employee, consultant, officer, director, shareholder, partner, or on his own account – in the territories assigned in the Franchise Agreement.

e.     Assign all telephone numbers to Miracle-Ear;

f.     Prepare copies of all customer files at Miracle-Ear's instruction, so that Miracle-Ear may arrange for the continued care of the customers;

g.     Immediately pay all sums due and owing to Miracle-Ear for royalty, national marketing fund, product, and finance charges;

h.     Immediately return all manuals, and software and other information provided by and belonging to Miracle-Ear.

24.     Finally, Defendants agreed, in Section 20 of the Agreements, that

> in any legal proceeding before a Court . . . the prevailing party shall be
> entitled to recover its reasonable legal fees, witness fees, accounting fees
> and other expenses reasonably incurred in the prosecution and or defense of
> such proceeding.  This section shall survive the termination or non-renewal
> of this Agreement under any circumstances.

Agreements § 20.

## DEFAULT AND TERMINATION

25.     By letters dated November 8, 2010, Miracle-Ear notified Defendants that
they had failed to make required payment pursuant to the Agreements.

26.     Upon information and belief, Defendants can not or will not cure the
default within the cure period.

27.     Accordingly the Agreements will terminate on December 10, 2010.

28.     Upon information and belief there is no dispute that Miracle-Ear's
termination is valid.

29.     Defendants have indicated that they will not comply with their post-
termination obligations under the Agreements.

30.     In particular, Miracle-Ear has information that Defendants intend to transfer
their current customers away from Miracle-Ear, to continue servicing them within the
Territories, and to obtain hearing aids for sale to consumers through another hearing aid
supplier.   Upon information and belief, the Defendants will not provide the required
copies of customer files and will continue to operate in violation of the non-competition
obligations.

31.     The post-termination provisions of the Franchise Agreements prohibit the use of any proprietary information obtained or developed as a Franchisee, which includes Miracle-Ear customer lists and files.  As a result, Defendants' continued use of this customer information is prohibited.

32.     Upon information and belief, Defendants dispute the validity of the non-competition provisions.

33.     Miracle-Ear will be irreparably harmed by the Defendants' continued operation of competing stores in the same Territories in which they formerly operated Miracle-Ear Centers and Sears Hearing Aid Centers.

34.     As a result of Defendants' refusal to comply with their post-termination obligations, including the non-competition obligation, and to pay amounts owing to Miracle-Ear, Miracle-Ear has been forced to bring this action and has incurred and will continue to incur attorneys' fees, costs and disbursements.

**COUNT I**
**DECLARATORY JUDGMENT**

35.     Plaintiff restates and incorporates the allegations contained in the preceding paragraphs.

36.     Miracle-Ear will be irreparably harmed by Defendants' failure to abide by their post termination obligations, including the non-compete provision contained in Paragraph 14B(11) of the Agreements.

37.     Defendants dispute that the non-competition provision is valid or enforceable.

38.     In Paragraph 21B of the Franchise Agreement, Defendants consented to the entry of an injunction enforcing the post-termination obligations of Paragraph 14B(11).

39.     Accordingly, Miracle-Ear hereby seeks injunctive relief declaring that the non-compete is valid and enforceable against all Defendants and prohibiting Defendants from operating any competitive business in the Territories until July 12, 2014 for the M&M Territory and August 12, 2014 for SGH Territory.

40.     There is a real and justiciable controversy over the enforceability of the non-compete obligations contained in the Agreements.

41.     The Court should declare that the non-compete obligations contained in the Agreements are enforceable and declare that Defendants from operating any competitive business in the Territories until July 12, 2014 for the M&M Territory and August 12, 2014 for SGH Territory.

**WHEREFORE**, Plaintiff asks that the Court:

1.     Issue an Order declaring that Defendants' Non-Competes are valid, binding, and enforceable;

2.     Temporarily and permanently enjoin Defendants from using, disclosing, or communicating any of Plaintiff's proprietary, confidential information in any way to or on behalf of anyone other than Miracle-Ear;

3.     Temporarily and permanently enjoin Defendants from owning, operating or conducting any competitive business until July12, 2014 in the zip codes officially associated with the following counties in the State of Georgia: Bartow, Catoosa, Chattooga, Dade, Floyd, Gordon, Murray, Polk, Walker, and Whitfield;

9

4.    Temporarily and permanently enjoin Defendants from owning, operating or conducting any competitive business until July12, 2014 in the zip codes officially associated with the following counties in the State of Tennessee: Bledsoe, Bradley, Grundy, Hamilton, Marion, McMinn, Meigs, Polk, Rhea, and Sequatchiel;

5.    Temporarily and permanently enjoin Defendants from owning, operating or conducting any competitive business until August 12, 2014 in the zip codes officially associated with the following counties in the State of Georgia: Appling, Atkinson, Bacon, Baker, Ben Hill, Berrien, Brooks, Calhoun, Chattahoochee, Clay, Clinch, Coffee, Colquitt, Cook, Crisp, Decatur, Dougherty, Early, Echols, Grady, Harris, Irwin, Jeff Davis, Lanier, Lee, Lowndes, Miller, Mitchell, Muscogee, Pierce, Quitman, Randolph, Schley, Seminole, Stewart, Sumter, Talbot, Telfair, Terrell, Thomas, Tift, Turner, Ware, Webster, Wilcox and Worth; and all zip codes officially associated to Marion county except 31058;

6.    Award Plaintiff its reasonable costs and attorneys' fees; and

7.      Grant such other and further relief as the Court deems just and equitable.


Dated: December 3, 2010                    /s Emily E. Duke
                                           Emily E. Duke (#249178)
                                           Keri A. McWilliams  (#0388085)
                                           FREDRIKSON & BYRON, P.A.
                                           200 South Sixth Street, Suite 4000
                                           Minneapolis, MN  55402-1425
                                           Telephone:  (612) 492-7000
                                           Facsimile:  (612) 492-7077
                                           eduke@fredlaw.com
                                           kmwilliams@fredlaw.com

                                           ATTORNEYS FOR PLAINTIFF


4842982.2